**FILED**

**AUGUST 3, 2010**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT



**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| ELLEN GOODMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  06 C 5526 |
| | ) | |
| vs. | ) | Judge Gettleman |
| | ) | |
| STEPHEN LEVY, | ) | Magistrate Judge Nolan |
| | ) | |
| Defendant. | ) | |
| | ) | |

**RULE 52(c) MOTION FOR JUDGMENT AND MOTION FOR RECOVERY OF
ATTORNEY'S FEES AND COSTS PURSUANT
TO 28 U.S.C. § 1927**

Defendant, STEPHEN LEVY, ("Levy"), by and through his attorneys, Thomas P. McGarry

and Todd P. Stelter, moves for judgment pursuant to Rule 52(c) and for full repayment of all

incurred attorneys' fees and costs pursuant to 28 U.S.C. § 1927, and states as follows:

### I.        Rule 52(c) Standard

Because this is a bench trial, defendant is directed by the federal rules to file a motion for

judgment pursuant to Fed. R. Civ. P. 52(c) in lieu of a motion for directed verdict.  *Gaffney v.

Riverboat Services of Indiana, Inc.*, 451 F.3d 424, 451 fn. 29 (7th Cir. 2006); *Fillmore v. Page*, 358

F.3d 496, 503 (7th Cir. 2004).  Rule 52(c) allows the district court to weigh the evidence at the to

determine whether plaintiff has proven her case.  A Rule 52(c) judgment is dispositive and will not

be overturned unless clearly erroneous.  *HA2003 Liquidating Trust v. Credit Suisse*, 517 F.3d 454,

457 (7th Cir. 2008); *Collins v. Ralston Purina Co.*, 147 F.3d 592, 599 (7th Cir. 1998).

### II.        Choice of Law

Because this case is premised on diversity jurisdiction, Illinois substantive law applies.  *Erie

R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Ocean Atlantic Dev. Corp. v. Aurora Christian Sch.*,

1

*Inc.*, 322 F.3d 983, 995 (7th Cir. 2003); *Sobilo v. Manassa*, 479 F. Supp. 2d 805, 813 (N.D. Ill. 2007).

      **III.**   <u>**No Malpractice**</u> **-- Plaintiff has Failed to Prove That Defendant Breached the Applicable Standard of Care as to Any of Her Alleged Claims**

      **a.**    **Chancery Court Claims / $40,000 Promissory Note Claim**

Plaintiff alleges that she possessed a $40,000 promissory note, apparently between herself and a non-party business entity, Images of the World, Ltd., that defendant did not recover upon *in the divorce* and thus committed malpractice. (Ex. A[1] ¶¶ 17-22.) At trial, defendant denied that he was retained to prosecute that claim against a non-party *in the chancery court*. Plaintiff's expert did not challenge this proposition. Plaintiff did not challenge this proposition either. In fact, plaintiff did not even know of the existence of the chancery case. Plaintiff's expert testified only that defendant breached the standard of care by failing to somehow advance the claim *in the divorce*. Plaintiff's complaint does not allege that defendant was retained to represent her in the chancery case – only the divorce case. (Ex. A ¶ 5.) Overall, in this entire case, there are no claims, allegations or testimony regarding defendant's duty *in the chancery case* nor any purported actions or omissions *in the chancery case*.

Plaintiff's claim that defendant should have won judgment in her favor on her $40,000 promissory note *in the divorce* is frivolous. It is frivolous because defendant did not start representing plaintiff until September 21, 2001, (Ex. M), and several years prior, on March 12, 1999, plaintiff was already involved in the pending chancery lawsuit against Images of the World, Ltd. wherein plaintiff's claim(s), including her claim as to the $40,000 promissory note were already pending via a counterclaim. (Exs. E & F.) The note itself is attached to the counterclaim as

---

[1]     All citations are to defendant's Trial Exhibits binders provided to the Court at trial.

an exhibit. (Ex. F.) Plaintiff was represented in the chancery lawsuit by predecessor counsel, Kalcheim, Schatz & Berger, who filed the claims via counterclaim on plaintiff's behalf. (Ex. F.)

The chancery case was always intended by the underlying courts *to follow* the divorce case (*i.e.* the chancery case was to sit dormant and was intended to be resolved only after the divorce case issues were resolved). This is clearly the understanding of the parties and the divorce court during the trial (Trial Testimony of 11/14/03, Exhibit R at page 91):

> **MR. INDYKE: Thank you. There is a case that follows this case, if the Court recalls, a chancery case.**
>
> **THE COURT: I understand.**
>
> **MR. INDYKE: My recollection is that Ms. Toushin counter-sued one or both of the companies in this chancery case for this loan.**
>
> **THE COURT: But they are not a party to this proceeding.**
>
> **MR. INDYKE: No, it's in another proceeding.**
>
> **THE COURT: They are not a party to this proceeding. Those cases were not consolidated.**
>
> **MR. INDYKE: Just to say it's in another case –**
>
> **THE COURT: It is in another case. All, right, we don't have to consider it in this case.**

Despite this, the $40,000 promissory was still admitted into evidence *in the divorce* by stipulation, thus contradicting plaintiff's false claims in this case that it was barred. (Trial Testimony of 9/11/03, Exhibit P at pages 164-165):

> **THE COURT: So 28 and 29, 28 is the note, 29 is the security agreement attached, are stipulated.**
>
> **MR. LEVY: That's admitted by stipulation, Judge, is that correct?**
>
> **MR. INDYKE: Correct.**
>
> **THE COURT: Proceed.**

6571074v1 38

Even after getting the note admitted into evidence, defendant Levy still fulfilled any possible additional obligations he might have had by making a later offer of proof as to the note claim. The court again correctly ruled the note to be irrelevant to the divorce case (between plaintiff and her ex-husband) because the note was between Images of the World, Ltd. and plaintiff (and not plaintiff and her ex-husband). The court ruled as follows (Trial Testimony of 11/14/03, Exhibit R at pages 89-91):

**THE COURT: Does it claim that there is a non-marital advance to the marital estate?**

**MR. INDYKE: No.**

**THE COURT: That's the $40,000. That is the loan.**

**MR. INDYKE: It's not the marital estate.**

**THE COURT: It is non-marital money. I want to know if there is a claim for non-marital money being paid to the estate.**

**MR. INDYKE: The debtor is a corporation.**

**THE COURT: The $40,000 that she testified to was not a loan to Mr. Toushin, it was a loan to a corporation?**

**MR. INDYKE: Yes.**

**THE COURT: Who is not a party to these proceedings.**

**MR. INDYKE: Correct.**

**THE COURT: All right, that satisfies that. Do you rest your case in chief?**

**MR. LEVY: Your honor, most respectfully, I'm making an offer of proof that although previously barred from filing it, I have a copy of a note dated November 15, 1992, in the amount of $40,000. It's a promissory note to pay to Ellen Toushin the sum of $40,000 with interest from November 15th on the unpaid principal at the rate of 20 percent per anum; and it bears the purported signature of Steven Toushin, Images of the World, Limited.**

**THE COURT: What is the offer of proof for?**

**MR. LEVY: Because I was barred from putting it in.**

**THE COURT: But that's to a corporation. The corporation is not a party to this proceeding, is it?**

**MR. LEVY: No, but the corporate stock is.**

**THE COURT: No, it isn't.**

**MR. LEVY: Judge, they claim it is non-marital.**

**THE COURT: By the way, Mr. Levy, let's not go into corporations 101. The fact is shares of stock represent ownership or interest in the ownership of the corp. It is not the only he issue of the corporation. The corporation made the loan, not the shares of stock. So, if there is a claim by Ellen Toushin against Images of the World, it has to be filed against Images of the World and not the stock.**

Several years after retaining successor counsel, on July 12, 2006, plaintiff voluntarily settled all of her *chancery court* claims, (Exs. V, W, Y & Z), including specifically her claim on the $40,000 promissory note. At the time of her voluntary settlement, she was represented by successor counsel, Howard London, not defendant. (Ex. Y ¶¶ 4 & H.) At the time of that settlement, defendant had long since ceased representing plaintiff. Successor counsel, Howard London, had been retained, at the very latest, on or before February 5, 2004, to be plaintiff's attorney, (Ex. W), and had been plaintiff's attorney ever since. Most importantly, Howard London was plaintiff's attorney in regard to her voluntary settlement of both the divorce and chancery cases in 2006 and signed off on the *court approved* settlement agreement as to both of those matters. (Ex. Y)

Any suggestion that defendant failed to file a claim upon the promissory note must be rejected because the claim was already pending in the chancery court and had been preserved since 1999. By law in Illinois, defendant could never have filed a second duplicate claim upon the promissory note *in the divorce case* because the claim was already pending in the chancery case. Illinois law prohibits concurrent actions pending between parties for the same cause. 735 ILCS 5/2-619(a)(3).

5

At trial in this legal malpractice case, plaintiff failed to present any evidence that defendant breached the applicable standard of care in any way in regard to this claim. Her claim is completely frivolous and has been an immense waste of defendant's time and resources, as well as this Court's time and resources. At trial, plaintiff failed to present any evidence showing that defendant harmed or negatively affected the claim in any way. In fact, at trial, plaintiff seemed genuinely surprised that the promissory note claim was already filed in a concurrent action, which she testified she did not know about, even though she clearly signed the counterclaim in 1999. (Ex. F.) It is unknown and inexplicable that her counsel, throughout the entire history of this case, failed to advise plaintiff (or remind plaintiff) of the existence of the chancery case.

Overall, plaintiff failed to establish any breach of any duty. At trial, plaintiff never even attempted to establish the relevance of her purported claim against a non-party business entity, Images of the World, Ltd., to any of the pending issues in the divorce. Additionally, plaintiff never established a sufficient foundation as to who or what executed the actual note. On the stand, plaintiff's expert denied having any opinions regarding the chancery case claims or proceedings *where the note claim was actually pending*. Plaintiff's expert's opinion that defendant should have somehow raised this issue in the divorce is frivolous and completely contradicted by the trial transcripts, applicable law, rules of civil procedure and logical relevance.

Additionally, the underlying record is full of evidence that demonstrates that the claim itself has no merit specifically because plaintiff was fully repaid on the note. In the underlying trial testimony, plaintiff's ex-husband Toushin testified explicitly that plaintiff was repaid on the $40,000 note when Toushin transferred his salary to plaintiff while he was in prison. (Ex. P, Trial Testimony of 9/11/03 at pages 219-220, 238-239, 242-244.) Plaintiff herself has repeatedly admitted receiving the salary. (Ex. P, Trial Testimony of 9/11/03 at pages 144-145; Ex. FF, Deposition of plaintiff of May 22, 2003 at pages 22-23; Ex. HH, Deposition of plaintiff of June 8,

1998 at pages 52-55.) Plaintiff at trial in this case admitted receiving the salary. Plaintiff's tax returns for 1996 and 1997 prove she received the salary, (Ex. II), and the checks showing the salary received were entered into evidence. (Ex. WW.)

The only conclusion that can be drawn from the evidence presented is that plaintiff's promissory note claim has no factual or legal basis. Even if the underlying claim had merit, it was always pending in the chancery case and was as viable the day defendant began representing her in the divorce as it was the day plaintiff retained successor counsel Howard London to represent her and voluntary settle all pending claims in all of her lawsuits. In Illinois, it is black letter legal malpractice doctrine that no legal malpractice exists in such a situation, specifically where a claim is viable at a time when plaintiff is represented by successor counsel. *See Nettleton v. Stogsdill*, 387 Ill. App. 3d 743, 755-56 (2d Dist. 2008); *Webb v. Damisch*, 362 Ill. App. 3d 1032, 1037-38, 842 N.E.2d 140, 146 (1st Dist. 2005); *Cedeno v. Gumbiner*, 347 Ill. App. 3d 169, 174, 806 N.E.2d 1188, 1192 (1st Dist. 2004); *Mitchell v. Schain, Fursel & Burney, Ltd.*, 332 Ill. App. 3d 618, 620, 773 N.E.2d 1192, 1193-94 (1st Dist. 2002); *Land v. Greenwood*, 133 Ill. App. 3d 537, 540-41, 478 N.E.2d 1203, 1205-06 (4th Dist. 1985) (no legal malpractice claim if the client has "viable" legal rights in the hands of subsequent counsel). As a result, this Court should enter judgment in favor of defendant and against plaintiff on this claim at a minimum.

Furthermore, at some point, plaintiff or her counsel should have stricken, withdrawn or amended this claim as it became abundantly clear throughout discovery, summary judgment briefing and trial, that it is a completely baseless and frivolous claim. Defendant has been forced to incur extensive fees and costs to defend himself from this wasteful four-plus-year-long bad faith action, and sanctions in the form of full repayment of his attorneys' fees and costs are therefore warranted. *See Section IV below.*

7

### b. Judicial Estoppel / Classic Vehicles

Plaintiff also claims that defendant should have brought a motion to "judicially estop" her ex-husband from claiming ownership of certain classic vehicles, and that this somehow would have prevented the ex-husband from arguing in the underlying trial that plaintiff was not gifted various classic vehicles. Notably, this claim is not contained anywhere in plaintiff's Complaint. (Ex. A.) Furthermore, this claim is baseless because plaintiff herself **denied** under oath that she was gifted any classic vehicles, (Ex. FF at page 75):

> **Q:** **Are you stating that – do you have an assertion or a statement that Steven made a gift of any of these cars to you?**
>
> **A:** **Steven wanted me to have the cars.**
>
> **Q:** **Did Steven actually make a gift of any of these cars to you?**
>
> **A:** **No, he didn't. Not that I know of.**

Plaintiff admitted to these statements at trial in this case. It makes no sense to argue that the underlying court would have ever awarded plaintiff the cars when plaintiff herself denied the gift. At trial in this case, plaintiff asserts that "judicial estoppel" should have applied and somehow resulted in her being gifted the classic vehicles, despite the denial, because plaintiff's ex-husband Toushin signed a federal court affidavit in an unrelated probation revocation proceeding.

However, the underlying trial court fully analyzed this issue and made its ruling on all of the same evidence. Plaintiff seems to be continually ignoring the fact that her ex-husband Toushin admitted in the underlying trial that he signed the affidavit and also admitted that he did not list all the classic automobiles in the sworn affidavit in 1996. (Ex. P, Trial Testimony of 9/11/03 at pages 299 & 301.) The trial court was clearly apprised of the information and even discussed it at length with the attorneys during the trial. (Ex. P pp. 301-303.) Therefore, it is apparent that the court ruled only after being completely apprised of, made aware of and after having heard testimony

8

regarding, the affidavit. (Ex. P pp. 301-303.) It makes no sense for plaintiff to now argue that the underlying trial judge would have ruled differently had the affidavit issue been presented to him through a "judicial estoppel motion" rather than at trial. There was nothing to "judicially estop" via a motion because Toushin admitted to all the information.

Furthermore, the court reviewed additional argument *after the trial* presented by both parties via briefs on the vehicle 'gifting' issues. (Exs. S & T.) Notably, argument regarding the affidavit issue was again presented. (Ex. T at pp. 5-6.) Again, the underlying court considered everything plaintiff is attempting to argue defendant here should have raised. Plaintiff cannot demonstrate that filing a motion on judicial estoppel grounds would have changed anything. She speculates that it would have but presented no evidence supporting the speculation. The underlying trial judge is presumed to have ruled equitably and logic dictates that, if presented with the same evidence, would have ruled the same no matter what form the argument was made in.

The Seventh Circuit rejects these types of arguments as proper legal malpractice allegations. "It is not malpractice to fail to make a motion that has little chance of being granted and if granted would confer a merely speculative benefit on the movant." *Transcraft v. Galvin et al.*, 39 F.3d 812, 815-16 (7th Cir. 1994). "Judges ought not by taking an expansive view of the tort of legal malpractice create incentives for lawyers to engage in busy "motion practice" in order to insulate themselves from legal liability. Judges ought not, in other words, encourage the practice of "defensive law" in the bad sense in which the term 'defensive medicine' is used of physicians who feel impelled by threat of malpractice liability to order tests that cost more than their expected benefits." *Id.*

There is no duty to pursue dead, losing or mere speculative claims. *Cedeno v. Gumbiner*, 347 Ill. App. 3d 169, 174, 806 N.E.2d 1188, 1192 (1st Dist. 2004); *Roberts v. Heilgeist*, 124 Ill. App. 3d 1082, 1086 (2d Dist. 1984).

9

Additionally, in Illinois, it is indisputable that a required element for judicial estoppel is that the party estopped must "have succeeded in the first proceeding and received a benefit." *Wolfe v. Wolf*, 375 Ill. App. 3d 702, 705 (1st Dist. 2007).[2] Plaintiff and her attorneys have vexatiously continued with this claim while simply ignoring the fact that the motion for which the affidavit was created, Toushin's *in forma pauperis* motion, was *denied*. (Ex. OO.) In other words, Toushin did not succeed in the first proceeding and he received no benefit. This obvious fact renders plaintiff's claim frivolous.

Furthermore, an extremely similar motion was already on file and pending before the underlying trial court on plaintiff's Petition to Sell Vehicles filed on August 26, 1999 (Ex. LL.) This Petition was entered and continued for trial. (Ex. LL.) The arguments made in the Petition cover the same factual and legal issues upon which plaintiff is claiming defendant Levy should have filed another motion. In other words, these issues were *already* pending at trial. (Ex. LL.) It is frivolous to argue that defendant should have filed a duplicative motion adding a non-applicable judicial estoppel theory to existing arguments already pending on record before the court. All in all, there is no way plaintiff or her attorneys can justify continuing to assert this claim in good faith all the way up to and through this trial when the claim is completely unsupported and contradicted by all the available relevant evidence and applicable law.

Alternatively, plaintiff also falsely asserts defendant Levy commited malpractice because plaintiff was "barred" from presenting certain specific evidence at trial and this prevented her from showing that her ex-husband had gifted her cars. (Ex. A ¶ 15.) However, it is all false testimony. There are no barring orders in the record. The trial record demonstrates that the court never barred any evidence. In fact, from the filing of plaintiff's complaint paragraphs 14-15, (Ex. A ¶¶ 14-15) up through plaintiff's and her expert's testimony at this trial, plaintiff and her counsel have continued

---

[2] Plaintiff's counsel were also counsel in *Wolfe v. Wolf* and have always been aware of its controlling authority.

to falsely assert that a letter from Toushin to Ruggiero regarding the vehicles was barred. To the contrary, the underlying trial record shows conclusively that the letter was *admitted*. (Ex. P, Trial testimony of 9/11/03 at pages 175-176):

> **Q:** **Among those exhibits that you were asked about, specifically Exhibit 10, by Mr. Indyke, is there a letter addressed from Steven Toushin to Angelo Ruggiero dated November 20th, '91?**
>
> **…**
>
> **MR. INDYKE: It's in evidence, Judge.**
>
> **THE COURT: It's in evidence. He can publish it at any time.**

From the filing of complaint paragraphs 14-15 (Ex. A ¶¶ 14-15) up through plaintiff and her expert's testimony at this trial, plaintiff and her counsel have continued to falsely assert that certain gift tax returns were barred. The underlying trial record shows that the gift tax returns were *admitted*. (Ex. P, Trial testimony of 9/11/03 at pages 261-262):

> **THE COURT: … So if you are going to say there was a gift tax return filed, well, there was already a transfer. The evidence that you have there is redundant, totally redundant.**
>
> **MR. LEVY: Then why is it?**
>
> **THE COURT: It is redundant. There is an admission by the parties that he transferred the titles to her. There is a document that is in evidence that he transferred the titles, three documents, to her. That's also redundant, but nevertheless, it is coming into evidence; I don't know why you need it.**

From the filing of complaint paragraphs 14-15 (Ex. A ¶¶ 14-15) up through plaintiff and her expert's testimony at this trial, plaintiff and her counsel have continued to falsely assert that documents and photos regarding storage of the vehicles had been barred. The underlying trial record shows that plaintiff never even possessed or controlled any such documents and photos at the time of trial. (Ex. P, Trial testimony of 9/11/03 at pages 133-134):

> **MR. INDYKE: Q. Ms. Toushin, did you since the time you acquired this '78 Rolls Roye, which is – which is shown and depicted in Group Exhibit 3, pay any storage on that vehicle?**

**A:  Yes.**

**Q:  Do you have evidence of that with you today?**

**A:  No. I don't have any.**

**Q:  Did the notice that requested you to bring the photos also request that you bring the evidence of your payments for any storage?**

**A:  I don't have that.**

**Q:  Pardon?**

**A.  I don't have that.  It was in the house, and I could never get back in the house to get that evidence.**

Furthermore, later in the underlying trial, plaintiff denied paying for storage altogether.  (Ex. R,

Trial testimony of 11/14/03 at page 39):

**Q:     … Your testimony is that from 1997 to November 14th, 2003, you haven't paid any storage bills on the cars that are part of the controversy in this case, which is the bently, the '78 Rolls, the '56 T-Bird, the two Mercedes, you haven't paid any storage on those since 1997; is that your testimony?**

**A:     Since I was denied access to them, I have not paid any storage on them.**

From the filing of complaint paragraphs 13 and 15 (Ex. A ¶¶ 13, 15) up through plaintiff and her

expert's testimony at this trial, plaintiff and her counsel have continued to falsely assert that vehicle

titles were barred.   The underlying trial record shows that the vehicle titles were *admitted* into

evidence by stipulation.  (Ex. O, Trial testimony of 9/10/03 at pages 76-78.)

It is also important to note that the above-mentioned *admitted* evidence was all actually

irrelevant to the question the underlying trial court was deciding.  The underlying trial court made

its decision of 'no gift' based on lack "donative intent" on the part of plaintiff's ex-husband

Toushin.   The judgment states:   "There was no evidence of donative intent on the part of

Petitioner."  (Ex. V ¶ 7.)  At trial, the court, in dismissing the relevance of the gift tax returns, stated

(Ex R, Trial testimony of 11/14/03, page 52):

**THE COURT:  The purpose of the transfer to her is the key question.**

12

In discussing the law upon which it was ruling, the court stated (Ex. P, Trial testimony of 9/11/03, pages 262-263):

> **THE COURT:  Right.  Must prove it by clear and convincing evidence.  What you are attempting to show, I assume, is that [Toushin] intended at the time that he made those transfers that he was making a gift …**

It is not disputed that plaintiff's ex-husband Toushin testified that he transferred the titles to plaintiff, temporarily, because he was going to prison, and that the intent of the transaction was always that the vehicles would be transferred back to Toushin in the future.  (Ex. P at pp. 200-201.)  A permanent gift was repeatedly denied.  (Ex. P at pp. 202-224.)  There is no evidence cited by plaintiff, barred or not barred, that contradicts that.

Overall, there is no malpractice in regard to the court's equitable division of the classic automobiles.  The underlying trial court's rulings as to the property distribution in the Judgment for Dissolution of Marriage are presumed to be *equitable* by law.  *In re Marriage of Swanson*, 275 Ill. App. 3d 519, 528, 656 N.E.2d 215, 222 (4th Dist. 1995); IMDMA §503.  Plaintiff cannot overcome that presumption, especially so here where she has no evidence.

The trial court's rulings, which are contained in Exhibits V and Y, award some vehicles to plaintiff's ex-husband but they also notably award a 1978 Rolls Royce to plaintiff, (Stmt. ¶ 23; Ex. V ¶¶ 11 & C), which she later voluntarily agrees to award back to her ex-husband, (Stmt. ¶ 34; Ex. Y ¶¶ C & D), and also a 1981 Chevrolet.  (Stmt. ¶ 25; Ex. W.)  It is assumed plaintiff is not asking this Court to give *those* vehicles back.  Plaintiff also received several other prior judgments in the case, which were all still pending and relevant to the judge's later rulings in equity, including the Order of November 14, 1997 granting plaintiff $3,300; the Order of September 16, 1998 denying maintenance due to plaintiff's cohabitation, residence and continuing conjugal basis with another person; the Order of November 12, 1998 granting plaintiff $15,000 in attorney's fees; and the Order of January 21, 2000 granting plaintiff $49,209.99 in attorney's fees.  (Ex. VV.)  Therefore, plaintiff

13

is asking this Court to determine that some indivisible part of an underlying interlocutory award should be changed to her favor but other parts of it, before and after, should just be left alone. That result could never exist in a court of equity.

Again, at some point, plaintiff or her counsel should have stricken, withdrawn or amended these baseless claims as it must have become abundantly clear throughout four-plus years of discovery, summary judgment briefing and trial, that the claims are frivolous. Defendant has been forced to incur fees and costs to defend himself from this vexatiously wasteful action, and sanctions in the form of full repayment of his attorneys' fees and costs are therefore warranted. *See Section IV below.*

### c. Personal Property Claims

Plaintiff claimed at trial that defendant committed malpractice by preventing her from recovering as to her household furnishings and various personal property. (Ex. A ¶ 29.) This claim is also frivolous.

Plaintiff, through defendant, filed a Petition for Determination of Status and Award of Personal Property on December 15, 2003. (Ex. U.) On January 6, 2004, when the Court ruled on distribution of the classic vehicles and the other property, it expressly reserved the determination as to plaintiff's household furnishings and personal property. (Ex. R at pp. 124), "COURT: I'm going to reserve that issue. I'm not going to make any determination… No testimony having been given about tangible personal property … It's reserved." This ruling is clearly reflected in the judgment. (Ex. V ¶ F.) An order was entered on December 15, 2003, expressly reserving determination of personal property issues and setting them to be resolved at a later date. (Ex. XX.) On or before February 5, 2004, plaintiff retained successor counsel, Howard London and appealed the interlocutory rulings of January 4, 2004. (Ex. X.) On, February 16, 2005, the appeal was dismissed for want of prosecution. (Ex. QQ.) On July 12, 2006, plaintiff voluntarily settled all of her pending

14

claims, (Stmt. ¶¶ 29-34; Exs. Y & Z), and specifically settled her personal property and household furnishings petition claims. (Stmt. ¶ 33; Ex. Y ¶¶ 1, 3, 5, F & I.)

There is no evidence that defendant did anything that negatively affected the viability of plaintiff's personal property claims. In fact, defendant clearly filed the petition which protected plaintiff's rights per the court's direction that the personal property issues were to be resolved at a later point. Thereafter, plaintiff voluntarily settled those claims pursuant to a court approved settlement. There are no allegations and there is no evidence that plaintiff settled for lesser than she would have but for defendant's purported negligence. Again, pursuant to *Nettleton*, *Webb*, *Cedeno*, *Mitchell* and *Land* cited above, there is no legal malpractice in this case.

In over four years of litigation, plaintiff and her counsel have purposely chosen to not amend, strike or withdraw this illogical claim. Even when the record has clearly demonstrated the baseless nature of the claim, plaintiff and her counsel choose to ignore it and continue to assert it in bad faith. As a result, defendant has been forced to incur extensive fees and costs to prepare to defend himself from an unsupported frivolous claim. Full repayment of defendants' attorneys' fees and costs is warranted. *See Section IV below.*

### d.     Schiller/Wells Claims

Plaintiff has also asserted throughout this case that defendant caused her to lose contributions she made to a property known as the "Schiller/Wells" property. This claim is frivolous because the record conclusively shows that neither plaintiff nor her ex-husband Toushin had any interest in the property. Therefore, the claim had no relevance in a divorce case between plaintiff and Toushin and plaintiff had no claim period.

The record shows that on May 20, 1998, plaintiff originally filed a Petition for Declaratory Judgment, by and through predecessor counsel. (Ex. B.) Count II of that Petition sought to have a constructive trust imposed over the Schiller/Wells property for the same reasons that plaintiff now

alleges she was entitled to contributions to the property – namely that her ex-husband had an interest in the property. On November 12, 1998, the court dismissed the claim. (Ex. C ¶ 4.) The Court stated:

> **"…even under the best scenario of everything that's been pled by Ellen [Goodman] and that has been presented and argued, I see virtually no way for a court to whatsoever enter a constructive trust. Even if it is shown that Steven Toushin has an interest in this property, all of the information proffered thus far would indicate that it would be a non-marital interest…"** (Ex. EE at 52-53.)

On December 31, 1998, plaintiff again attempted to file her claim through an Amended Count II Verified Petition for Imposition of Constructive Trust. (Ex. D.) On October 28, 1999, the court dismissed it again for the second time. (Ex. G.) A motion to reconsider was filed on November 18, 1999, (Ex. H), and a motion to amend the count was filed on December 19, 1999. (Ex. I.) Both were dismissed again by the court for now the third time. (Ex. N.)

In the underlying litigation, plaintiff herself testified under oath that the Schiller/Wells issue was *not* a dispute between herself and her ex-husband Toushin but rather a business contract issue between her and non-parties Angelo and Gina Ruggiero. (Ex. CC at 57-58.) She testified that the "documents" she possessed showed the *she* (not Toushin) had an interest in the Schiller/Wells property "or was acquiring an interest in the building" "under contract with Angelo and Gina Ruggiero and the law firm with Foghossian, that I was preparing to buy the building, and I then invested a lot of money in it at the same time before the actual close of the building, of the contract." (Ex. CC at 57-58.) When defendant's counsel asked why she thought she was entitled to this money back, she stated "I had an agreement with Angelo Ruggiero that I was buying the building. We had a contract … and because we had that contract, I then invested … money into the building, and I'm entitled to that money back." (Ex. CC at 69-70.) She testified "Because of the work and the money that I put into the building, I'm entitled to something. My money was put into a building. That I had a contract with Angelo was buying and then it didn't happen." (Ex. CC at

6571074v1 38

72.)  Plaintiff admitted to all of this impeaching testimony on the stand in this trial.  Thus, plaintiff herself admits her dispute is with non-parties.

It is therefore unknown and completely inexplicable as to why plaintiff and her counsel have chosen to make this an issue in this legal malpractice case.  Plaintiff has no evidence, no logical argument nor any good faith basis to bring this claim and the underlying record proves this.  In fact, in the underlying litigation, an officer of the land trustee, Midwest Trust Services, Inc. testified via affidavit that **"at no time has Steven Hal Toushin or Ellen Goodman Toushin held any portion of the the beneficial interest … The entire beneficial interest is owned by an individual, who is not a party …"** (Ex. SS.)  This fact has never been contradicted.

Without any justifiable basis, plaintiff and her counsel have chosen to needlessly continue this claim for years causing defendant to incur fees and costs to defend himself.  *See Section IV below.*

### IV.  Defendant Should Be Awarded Full Attorneys' Fees and Costs Pursuant to 28 U.S.C. § 1927 because Plaintiff and Her Attorneys Have Unreasonably and Vexatiously Continued Multiple Claims Without Any Evidentiary Support

28 U.S.C. § 1927, in full, provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

Section 1927 allows district courts to assess attorneys' fees against counsel and law firms who willfully abuse the judicial process by "conduct *tantamount* to bad faith." *Avirgan v. Hull,* 932 F.2d 1572, 1582 (11th Cir.1991) (emphasis added); *Roadway Express Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).  Additionally, "a finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument." *Barnes v. Dalton,* 158 F.3d 1212,

17

1214 (11th Cir.1998) *(quoting Primus Automotive Fin. Servs., Inc. v. Batarse,* 115 F.3d 644, 649 (9th Cir.1997)).

Sanctions are warranted: (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose." *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003).

Further, "sanctions are warranted when a party exhibits a deliberate indifference to obvious facts …" *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002). A litigant's obligations are not measured solely at the time of filing because a party or counsel has a continuing obligation to advise the court of any changes regarding the veracity of information before the court. *Attwood v. Singletary*, 105 F.3d 610, 612 (11th Cir. 1997). "When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest." *Avirgan v. Hull*, 923 F.2d 1572, 1582.

As argued above, none of plaintiff's claims in this case were supported by any evidence or testimony at trial. In fact, the testimony given at trial was clearly baseless and contradicted by the underlying record. Plaintiff could only support her claims with false accusations and speculation. Plaintiff should not have filed her pleading which lacked any reasonable factual basis in the first place. Plaintiff and her counsel should not have continued this baseless litigation for the past four-plus years. Furthermore, when it became apparent to plaintiff and her counsel that there was no evidence supporting her claims, plaintiff and her counsel had a duty to advise the court, strike, dismiss or amend their pleading. They did not and therefore did not comply with the law.

6571074v1 38

WHEREFORE, defendant, STEPHEN LEVY, respectfully requests this Court (1) grant judgment in favor of defendant and against plaintiff on all claims and causes of action; (2) grant full repayment of defendant's attorneys' fees and costs incurred in his defense.

Respectfully submitted,


By:_____s/Thomas P. McGarry_____
    One of the attorneys for Defendant

Thomas P. McGarry
Todd P. Stelter
HINSHAW & CULBERTSON, LLP
222 North LaSalle Street
Suite 300
Chicago, Illinois 60601
(312) 704-3000
(312) 704-3001 (FAX)

6571074v1 38